UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEREMY CLAY,

          Plaintiff,          Case No. 1:22-cv-193

v.                                                Honorable Ray Kent

J. LANGDON et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Langdon and Scott. The Court will also order Plaintiff to supplement his complaint to provide the name of Defendant Unknown Party Male Nurse within 90 days.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Health Unit Manager J. Langdon, Registered Nurse Cierra Scott, and Unknown Party named as Male Nurse.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff alleges that on May 27, 2021, he went to dental to have a tooth pulled. The dentist told Plaintiff that he could not pull it at that time but would reschedule Plaintiff. Plaintiff claims that the infection grew over the weekend, and he began to have trouble urinating. Plaintiff states that when he was able to urinate, it was quite painful.

On Monday May 31, 2021, Plaintiff's symptoms were worse and when he went to chow hall for lunch, he submitted a health care kite. Even though it was Memorial Day, staff were present to collect kites from the kite box. MDOC policy provides that prisoners who submit a health care kite be seen on the next business day, so Plaintiff expected to be called out on Tuesday June 1, 2021. However, Plaintiff was not called out to health care, so he submitted a second kite on Wednesday June 2, 2021. That evening, Plaintiff received a response to the first kite from Defendant Scott, dated June 1, 2021, stating that she would schedule him to be evaluated by Nursing and that it sounded as if Plaintiff might have a urinary tract infection (UTI). Plaintiff was advised to increase his water intake.

Plaintiff states that he was not seen by health care for the next seven days, during which his symptoms worsened, and he experienced high fever, cold chills, and loss of appetite. On the fifth day, Plaintiff began to have difficulty breathing. Plaintiff also noted that his heart rate seemed erratic and that he was very weak. On Wednesday June 9, 2021, Plaintiff asked staff members in his housing unit to call health care. At approximately 6:00 p.m., Corrections Officer Parris called health care on Plaintiff's behalf and spoke to Defendant Unknown Male Nurse, explaining Plaintiff's symptoms and condition. Defendant Unknown Male Nurse stated that he would call back.

At 7:30 p.m., Defendant Unknown Male Nurse called the housing unit and told Corrections Officer Lobdell not to send Plaintiff to health care, and that Plaintiff would be scheduled for an appointment some time the following week. Corrections Officer Lobdell stated that Plaintiff appeared as if he needed to be seen right away, but Defendant Unknown Male Nurse refused to allow Plaintiff to come to health care.

On Thursday June 10, 2021, Plaintiff submitted another kite stating that he was able to urinate without pain, but that he was still having high fevers, cold spells, shortness of breath, chest pain, nausea, dizziness, and lightheadedness. On Friday June 11, 2021, Plaintiff was finally called to health care. Plaintiff was given a urine test, which showed that he had an infection. The nurse seemed to panic and told another nurse that she needed to go speak to the doctor immediately. The nurse returned a few minutes later and told Plaintiff that the doctor was placing him on an antibiotic called Ciprofloxacin, and that he was to begin immediately. Plaintiff was then given an envelope containing seven tablets labeled with his name and "Cipro 500 mg, take one tablet in AM and one tablet at night, 7 days." (ECF No. 1, PageID.13.) Plaintiff was told that the rest of the medication would be ordered from the pharmacy. Plaintiff was also prescribed Flomax to be taken once a day for seven days to help him flush out the infection. Plaintiff received four capsules from stock and was told that three additional capsules would be sent from the pharmacy. Nurse Practitioner Mathew Wideman then instructed Plaintiff to make sure he took all of the medication as directed because his UTI test results were "really bad." (*Id.*, PageID.14.) On Monday June 14, 2021, Plaintiff received the rest of his prescription in a clear zip lock bag with a pharmacy label on the outside.

Plaintiff claims that Defendants' denial of medical attention resulted in him developing septicemia. Plaintiff claims that such conduct constitutes deliberate indifference in violation of the Eighth Amendment.

Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Langdon

Plaintiff fails to allege that Defendant Langdon took any action against him, other than to suggest that he failed to ensure that his subordinates complied with MDOC policy regarding calling prisoners to health care in a timely manner or to properly investigate Plaintiff's grievance. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Langdon encouraged or condoned the conduct of his subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about Defendant Langdon's conduct other than to point out that Defendant Langdon approved the denial of Plaintiff's grievance. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Langdon was personally involved in the events surrounding the handling of Plaintiff's health care kites. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendant Langdon are premised on nothing more than respondeat superior liability, they are properly dismissed from this action.

**B. Defendant Scott**

Plaintiff claims that Defendant Scott violated the Eighth Amendment when she responded to his urgent health care request on June 1, 2021, by scheduling Plaintiff for an appointment on

8

June 15, 2021, rather than for the next day as required by MDOC policy. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding

9

that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

As noted above, Plaintiff claims that Defendant Scott responded to his kite on June 1, 2021, which stated that she would schedule him to be evaluated by Nursing and that it sounded as if Plaintiff might have a urinary tract infection (UTI). Plaintiff was advised to increase his water

10

intake. In a step I grievance response, which is attached to Plaintiff's complaint, the respondent noted that the nurse who answered the kite scheduled Plaintiff for an appointment, but accidentally put the wrong date in the scheduler. (ECF No. 1-2.) The respondent stated "Unfortunately computer entries sometimes have the wrong dates. The nurse scheduled the appointment but hit the wrong button which put the appointment out farther." (*Id.*) Plaintiff does not make any further allegations regarding Defendant Scott.

Nothing in Plaintiff's complaint, nor in the attachments thereto, indicate that Defendant Scott deliberately prevented Plaintiff from being timely evaluated for his symptoms. As set forth above, the subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care, *Brown*, 207 F.3d at 867, and deliberate indifference "entails something more than mere negligence." *Farmer,* 511 U.S. at 835. The Court concludes that while Plaintiff's allegations against Defendant Scott may support a claim for negligence, they are insufficient to show that she acted with deliberate indifference. Therefore, Defendant Scott is properly dismissed from this action.

**C.  Unknown Party, named as Male Nurse**

Plaintiff alleges that on Wednesday June 9, 2021, Corrections Officer Parris called health care on Plaintiff's behalf and spoke to Defendant Unknown Male Nurse and explained Plaintiff's symptoms and condition. Defendant Unknown Male Nurse stated that he would call back. When Defendant Unknown Male Nurse called back at 7:30 p.m., he told Corrections Officer Lobdell not to send Plaintiff to health care, stating that Plaintiff would be scheduled for an appointment some time the following week. Corrections Officer Lobdell stated that Plaintiff appeared as if he needed to be seen right away but Defendant Unknown Male Nurse refused to allow Plaintiff to come to health care.

11

At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to Plaintiff, the Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Unknown Party Male Nurse.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Langdon and Scott will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claim against Defendant Unknown Party Male Nurse remains in the case.

An order consistent with this opinion will be entered.

Dated:   June 16, 2022                             /s/ Ray Kent
                                                   Ray Kent
                                                   United States Magistrate Judge